## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *f/u/b/o* | * | |
| CHASNEY AND COMPANY, INC., | * | |
| **Plaintiff** | * | |
| **v.** | * | **CIVIL NO. JKB-14-2148** |
| HARTFORD ACCIDENT | * | |
| AND INDEMNITY CO., *et al.*, | * | |
| **Defendants** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM AND ORDER

Chasney and Company, Inc. ("Chasney") brought a claim under the Miller Act, 40 U.S.C. § 3133, against Hartford Accident and Indemnity Co. ("Hartford"). Thereafter, James W. Ancel, Inc. ("JWA") secured leave of court to intervene pursuant to Rule 24 of the Federal Rules of Civil Procedure ("FRCP"). (ECF No. 8.) Now pending before the Court are two procedural motions[1]: a Motion to Strike Evidence of Settlement Offers (ECF No. 36) filed by Hartford and JWA (collectively, "Defendants"); and a Motion to Modify Scheduling Order and for Leave to Amend Complaint (ECF No. 37) filed by Chasney.[2] The issues have been briefed, and no hearing is required, Local Rule 105.6 (D. Md. 2014). For the reasons explained below, Defendants' Motion will be GRANTED, and Chasney's Motion will be DENIED.

---

[1] Also pending are Defendants' Motion for Partial Summary Judgment (ECF No. 27), which is fully briefed, and Defendants' Supplemental Motion for Partial Summary Judgment (ECF No. 51), to which Chasney has not yet responded. The Court anticipates that it will address both Motions in a single Memorandum once Defendants' Supplemental Motion is ripe for decision.

[2] For clarity, the Court will refer to ECF No. 37 throughout this Memorandum as Chasney's "Motion to Amend."

## I.    Factual and Procedural Overview

This dispute arises out of a large-scale government construction project beset with obstacles and delay.  JWA, as general contractor, executed contract number W912QR-10-C-0029 with the United States of America, by and through the United States Army Corps of Engineers ("the USACE"), for the construction of an Army Reserve Center in Baltimore, Maryland ("the Project").  (ECF No. 1 ¶ 5.)  In connection with this contract and pursuant to the Miller Act,[3] JWA delivered a payment bond for the protection of its subcontractors ("the Bond"), with Hartford acting as surety.  (ECF No. 1–1.)  Thereafter, JWA entered into a subcontract agreement ("the Subcontract") with Chasney whereby Chasney would supply HVAC and plumbing services for the Project; JWA would, in turn, compensate Chasney with a flat fee of $1.5 million.  (ECF No. 1 ¶ 7.)

The Subcontract includes a no-damages-for-delay clause, which shields JWA from liability for delay damages unless JWA has itself recovered such damages from the Government.  (ECF No. 1–2 at 3.)  Chasney alleges that, "during the course of performing its work on the Project, [it] was delayed in its ability to prosecute and complete its work."  (ECF No. 1 ¶ 11.)  Consequently, it incurred unanticipated costs totaling $380,687.65.  (*Id.* ¶ 12.)[4]  Chasney further avers that it submitted this delay-damage claim to JWA and that JWA thereafter obtained

---

[3] The Miller Act provides that, before any federal construction contract exceeding $100,000 is awarded, the contractor must furnish both a performance bond "for the protection of the Government" and a payment bond "for the protection of all persons supplying labor and material in carrying out the work provided for in the contract."  40 U.S.C. § 3131(b).

[4] Aside from its delay-damage claim, Chasney alleges that JWA owes it an additional sum for labor and material costs it incurred at JWA's direction.  In Chasney's original Complaint, it estimated these additional costs at $79,882.45.  (ECF No. 1 ¶ 10.)  In Chasney's proposed Amended Complaint, discussed *infra*, it lowered its estimate to $6456.14.  (ECF No. 37–1 ¶ 12.)  Obviously, in the event that this case proceeds to trial, Chasney will have an opportunity to prove its actual damages with competent evidence.

compensation for the claim from the USACE.  (*Id.* ¶¶ 13-14.)  Nevertheless, JWA has refused to remit such compensation to Chasney.[5]

Chasney filed suit on July 2, 2014, naming Hartford as Defendant and claiming against the Bond.  (ECF No. 1.)  On September 15, 2014, JWA secured leave of Court to intervene. (ECF No. 8.)  Together, Defendants filed a Motion to Dismiss (ECF No. 9); in a June 22, 2015, Order, Judge William D. Quarles, Jr., denied Defendants' Motion.  (ECF No. 17.)[6]  Judge Quarles thereafter entered a Scheduling Order, which established, *inter alia*, an August 17, 2015, deadline for joinder of additional parties and amendment of pleadings.  (ECF No. 20 at 2.)

On August 21, 2015, Defendants filed a Motion for Partial Summary Judgment (ECF No. 27).  Chasney filed a response in opposition (ECF No. 28), to which response Chasney appended an exhibit evidencing a settlement offer from JWA to Chasney.  Defendants filed the pending Motion to Strike (ECF No. 36) with respect to that exhibit and any cross-references in Chasney's opposition memorandum.[7]  Then, on October 14, 2015, Chasney filed an untimely Motion to Amend.  (ECF No. 37.)  Defendants opposed Chasney's Motion (ECF No. 39); Chasney did not reply within the time allotted by Local Rule 105.2(a).

The case was transferred to the undersigned on January 14, 2016.  The pending motions to strike and to amend are ripe for decision.

---

[5] The pending Motions for Partial Summary Judgment address in detail the questions (1) whether JWA in fact received any funds attributable to Chasney's delay damages and, if so, (2) whether Chasney is nevertheless barred from recovering such funds due to the operation of certain release affidavits executed by the parties.  Nothing in this Memorandum should be read to reflect the Court's opinion as to those pending Motions or the underlying arguments, which the Court will address in due course.

[6] In his Memorandum accompanying the June 22, 2015, Order, Judge Quarles held that the no-damages-for-delay clause in the Subcontract, discussed above, is enforceable.  (ECF No. 16 at 6-7.)  That holding is the law of the case for the duration of these proceedings.  *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988).

[7] Chasney filed a response in opposition to Defendants' Motion to Strike (ECF No. 38), and Defendants replied (ECF No. 40).

## II.   *Defendants' Motion to Strike (ECF No. 36)*

In its memorandum opposing summary judgment, and in an affidavit appended as Exhibit D to that memorandum (ECF No. 28–4), Chasney referenced a $75,000 offer by JWA to settle Chasney's delay-damage claim.  Chasney also included the e-mail chain through which JWA made its settlement offer.  (*Id.* at 29-34.)  In their Motion to Strike (ECF No. 36), Defendants contend that such information is inadmissible under Rule 408 of the Federal Rules of Evidence ("FRE") and should therefore be stricken from the summary judgment record.

FRE Rule 408 prohibits admission of compromise offers and negotiations if the proponent would use such statements to prove or disprove the validity or amount of a disputed claim or to impeach a witness by a prior inconsistent statement or contradiction.[8]  The rule specifically bars evidence of "furnishing, promising, or offering . . . a valuable consideration in compromising or attempting to compromise [a] claim," as well as "conduct or a statement made during compromise negotiations about the claim."  The 1974 Advisory Committee Notes (promulgated upon the rule's enactment) explain that the "purpose of [the] rule is to encourage settlements which would be discouraged if such evidence were admissible."  *See also Fiberglass Insulators, Inc. v. Dupuy*, 856 F.2d 652, 654 (4th Cir. 1988) ("The public policy of favoring and encouraging settlement makes necessary the inadmissibility of settlement negotiations in order to foster frank discussions.").  The 1972 Advisory Committee Notes (promulgated upon the rule's proposal) add that compromise evidence is "irrelevant, since [an] offer may be motivated by a desire for peace rather than from any concession of weakness of position."  *See also Coulibaly v. J.P. Morgan Chase Bank, N.A.*, Civ. No. DKC 10-3517, 2011 WL 3476994, at *9 (D. Md. Aug. 8, 2011) (acknowledging the "realities of modern litigation, where parties settle for a myriad of

---

[8] FRE Rule 408(b) provides, however, that a court *may* admit compromise evidence for "another purpose," such as proving witness bias, negating a contention of undue delay, or demonstrating obstruction.

reasons"), *aff'd*, 526 F. App'x 255 (4th Cir. 2013) (per curiam); *cf. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007) ("[T]he threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching [summary judgment and trial] proceedings."). Where evidence is inadmissible pursuant to Rule 408, such evidence "cannot be considered for purposes of summary judgment." *Emcor Grp., Inc. v. Great Am. Ins. Co.*, Civ. No. ELH-12-0142, 2013 WL 1315029, at *24 (D. Md. Mar. 27, 2013), *aff'd*, No. 14-1682, 2016 WL 304106 (4th Cir. Jan. 26, 2016) (per curiam); *see also* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."); *Osunde v. Lewis*, 281 F.R.D. 250, 259 n.8 (D. Md. 2012) ("[A]ny reference by Plaintiffs to communications with Defendant regarding settlement as 'evidence' of a genuine dispute of material fact would be quite improper, and inadmissible.").

Presumably anticipating a challenge pursuant to FRE Rule 408, Chasney included a lengthy footnote in its opposition memorandum justifying the settlement evidence on the grounds that (1) at the time JWA made its offer, there was no dispute as to the validity or amount of Chasney's claim, and (2) the evidence is admissible "for the purpose of showing [JWA's] understanding of its obligations to Chasney with respect to Chasney's delay claim."  (ECF No. 28 at 17 n.4.)  Chasney renews both arguments in its opposition to Defendants' Motion to Strike; neither argument is persuasive.

As to Chasney's first argument—that there was no dispute over the claim at the time JWA made its offer—the summary judgment record suggests otherwise.  James W. Ancel, Sr., president of JWA, attested in an affidavit that, while JWA did submit Chasney's claim for Government consideration, JWA never approved the claim and did not certify it; moreover, Government officials were dismissive of the claim and assigned no value to it.  (ECF No. 35−1 at

4-5.)   Mr. Ancel added that JWA made the $75,000 offer not because JWA recognized Chasney's claim as valid but because JWA wished to "avoid litigation and the risks and costs associated with litigation" and to "preserve its business relationship with Chasney."  (*Id.* at 5.) The e-mail chain included in Chasney's Exhibit D reinforces Mr. Ancel's statement:  Ancel made the $75,000 offer in an e-mail labeled "For Settlement Purposes Only—Without Prejudice"; he also rejected Chasney's contention that JWA had received $380,687 on Chasney's behalf, and he stated that he considered $75,000 a "fair and reasonable" offer.  (ECF No. 28–4 at 31, 33.)[9]  The Court has little difficulty concluding that, at the time it made the settlement offer, JWA disputed Chasney's delay-damage claim.

As to Chasney's second argument—that the settlement offer is admissible to demonstrate JWA's understanding of its obligations—that is tantamount to asserting that the offer is admissible for proof of liability.   Chasney's discussion in its opposition memorandum is revealing:  it writes that JWA's "actions in attempting to pay Chasney a lesser amount for its delay claim  . . . unequivocally demonstrates that [JWA] did not believe that Chasney's claim was barred by the [Release] Affidavits, else why would [JWA] offer to pay Chasney $75,000 towards its delay claim?"  (ECF No. 28 at 16-17.)   In other words, Chasney seeks to prove its claim by showing that *even JWA* acknowledged the claim's viability.   This is precisely the kind of proof that FRE Rule 408 prohibits—and for good reason, given the variety of motives that may underlie a settlement offer.[10]

---

[9] This evidence directly contradicts Chasney's conclusory assertion that JWA was "attempting to induce Chasney to settle 'an *admittedly due amount* for a lesser sum.'"  (ECF No. 38 at 2 (emphasis added).)

[10] In its response in opposition to Defendants' Motion to Strike, Chasney relies heavily on *Bituminous Construction, Inc. v. Rucker Enterprises, Inc.*, 816 F.2d 965 (4th Cir. 1987).  There, the United States Court of Appeals for the Fourth Circuit found that the district court had not abused its discretion when it admitted evidence of settlement negotiations between the parties "for the purpose of showing [the defendant's] understanding of its obligations under [a] joint check agreement."  *Id.* at 969. That agreement required the defendant to issue checks payable jointly to the plaintiff and a third party, but the agreement only specifically referenced payments for materials—and there was conflicting evidence as to whether the defendant had also agreed to make joint payments for labor and equipment.

In its response in opposition to Defendants' Motion to Strike, Chasney additionally contends that Defendants' Motion is moot because Defendants themselves supplied an affidavit discussing the circumstances of the settlement offer. (ECF No. 38 at 5.) But Defendants only supplied this affidavit in *response* to Chasney's Exhibit D. Indeed, Chasney's logic would seem to put Defendants between a rock and a hard place, forcing them to either (1) dispute Chasney's characterization of the settlement offer and thereby waive any objection to admissibility; or (2) remain silent and run the risk that, were the Court to decline their Motion to Strike, the Court would then resolve summary judgment in light of Chasney's characterization alone.[11]

Because evidence concerning JWA's settlement offer is inadmissible for the proposed purpose, the Court will GRANT Defendants' Motion to Strike, and it will further STRIKE Exhibit D to Chasney's memorandum opposing summary judgment. The Court recognizes, however, that Exhibit D contains substantial information that may be relevant to the Court's analysis on summary judgment and that is not inadmissible under FRE Rule 408. Accordingly,

---

*Id.* at 968. In the absence of a written provision on point and in the face of conflicting testimony, the district court looked to settlement negotiations simply to understand the nature and extent of the parties' agreement. Here, by contrast, the release affidavits at issue include an express and very broadly drafted waiver-of-claims provision. While Chasney has made a series of arguments contesting the enforceability and application of those affidavits— arguments the Court will take up in due course—Chasney has not demonstrated such ambiguity as would compel the Court to consider otherwise inadmissible evidence in an effort to divine the parties' intent. *See Gen. Motors Acceptance Corp. v. Daniels*, 492 A.2d 1306, 1310 (Md. 1985) ("It is well settled that Maryland follows the objective law of contracts. . . . [T]he clear and unambiguous language of an agreement will not give [way] to what the parties thought that the agreement meant or intended it to mean.").

It is also worth noting that district courts are entitled to substantial deference on appellate review of their evidentiary rulings. *See Fiberglass Insulators, Inc. v. Dupuy*, 856 F.2d 652, 654-55 (4th Cir. 1988) ("The trial court has discretion on the issue of whether to admit . . . evidence for [a permissible] purpose under Rule 408, and the court's decision will not be reversed in the absence of an abuse of discretion 'amounting to manifest error.'" (quoting *Bituminous*, 816 F.2d at 968)). The mere fact that the *Bituminous* court found no manifest error under the particular circumstances of that case should not necessarily be construed as a mandate for future evidentiary determinations.

[11] The single case that Chasney cites in support of its mootness argument, *Brown v. White's Ferry, Inc.*, 280 F.R.D. 238 (D. Md. 2012), is readily distinguishable. In *Brown*, the plaintiffs introduced certain of the defendant's discovery responses as exhibits to their motion for summary judgment; then, in their reply papers, they argued that these responses were inadmissible and inappropriate for consideration at the summary judgment stage. Judge Chasanow opined that the plaintiffs could not "in good conscience ask the court to rely on the discovery responses in support of their motion and then argue that the evidence is incompetent to the extent that [the defendant] relies on the same evidence." *Id.* at 243. Here, by contrast, Defendants supplied Mr. Ancel's affidavit only in response to Chasney's Exhibit D.

the Court will grant Chasney a reasonable opportunity to resubmit the exhibit with the offending content either redacted or omitted.  Furthermore, given that both parties discuss the settlement offer in their summary judgment memoranda (*i.e.*, Chasney's opposition and Defendants' reply); given the length of time for which Defendants' Motion to Strike has been pending; and given that the Court anticipates it will soon turn its attention to the pending summary judgment motions, the Court will not require the parties to redact or revise their memoranda at this late stage.  *See Anderson v. United States*, Civ. No. CCB-08-3, 2009 WL 890094, at *1 n.1 (D. Md. Mar. 26, 2009) (striking inadmissible exhibits pursuant to Rule 408 while disregarding rather than striking information contained in plaintiff's complaint and memoranda).  However, the parties are on notice that, in resolving the summary judgment motions, the Court will give no further consideration to JWA's settlement offer or to the parties' characterizations of that offer.[12]

### III.    *Chasney's Motion to Amend (ECF No. 37)*

Through its proposed Amended Complaint, Chasney seeks to add a state-law breach-of-contract count (Count II), justiciable under this Court's supplemental jurisdiction, *see* 28 U.S.C. § 1367.  As noted above, Chasney filed its Motion to Amend outside the period prescribed by the Court's Scheduling Order.  Consequently, two rules are implicated:  FRCP Rule 15(a)(2), which instructs the Court to freely grant leave to amend when justice so requires, and FRCP Rule 16(b)(4), which warns that the scheduling order may be modified "only for good cause."  *See Century Metal Recycling Private Ltd. v. Metal Worldwide, Inc.*, Civ. No. JKB-12-2650, 2014 WL 6474221, at *1 (D. Md. Nov. 18, 2014); *Wonasue v. Univ. of Md. Alumni Ass'n*, 295 F.R.D. 104, 106-07 (D. Md. 2013).  As the United States Court of Appeals for the Fourth Circuit has acknowledged, there is "tension within the Federal Rules of Civil Procedure between Rule 15(a)

---

[12] Notwithstanding Defendants' trepidations about Chasney "poison[ing] the well" (ECF No. 36–1 at 2), the Court is quite capable of disregarding the settlement offer and related discussion in conducting its analysis on summary judgment.

and Rule 16(b)." *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008).  On one hand, a motion to amend under Rule 15(a) is generally denied only where the amendment would be prejudicial or futile or where the movant has shown bad faith.  *Id.*  "On the other hand, Rule 16(b) provides that 'a schedule shall not be modified except upon a showing of good cause and by leave of the district judge.'"  *Id.*

In light of this tension, courts in this District have employed a two-step analysis in considering late-filed motions to amend:  "[O]nce the scheduling order's deadline for amendment of the pleadings has passed, a moving party first must satisfy the good cause standard of Rule 16(b); if the moving party satisfies Rule 16(b), the movant then must pass the tests for amendment under 15(a)."  *Odyssey Travel Ctr., Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 631 (D. Md. 2003); *see also Nourison Rug Corp.*, 535 F.3d at 299 (sustaining district court's application of Rule 16(b) and therefore finding it unnecessary to review district court's application of Rule 15(a)).

The Rule 16(b) inquiry is less concerned with the substance of a proposed amendment and more concerned with its timing.  "Because a court's scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril,' a movant must demonstrate that the reasons for the tardiness of his motion justify a departure from the rules set by the court in its scheduling order."  *Odyssey Travel Ctr., Inc.*, 262 F. Supp. 2d at 632 (quoting *Potomac Elec. Power Co. v. Elec. Motor Supply, Inc.*, 190 F.R.D. 372, 375 (D. Md. 1999)).  The burden for demonstrating good cause rests on the moving party, *Firemen's Ins. Co. of Wash. D.C. v. Glen-Tree Invs., LLC*, No. 7:11-CV-59-D, 2012 WL 4191383, at *3 (E.D.N.C. Sept. 19, 2012), and the "focus of the inquiry is upon the moving party's reasons for seeking

modification.  *If that party was not diligent, the inquiry should end.*"  *Odyssey Travel Ctr., Inc.*, 262 F. Supp. 2d at 632 (quoting *Marcum v. Zimmer*, 163 F.R.D. 250, 254 (S.D. W. Va. 1995)).

If a movant satisfies the requirements of Rule 16(b), only then will the Court conduct an analysis under Rule 15(a) with its comparatively light burden.  Absent evidence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment," and so forth, leave to amend is freely granted.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).[13]

In its proposed breach-of-contract count, Chasney alleges that Defendant breached Articles 11 and 17 of the Subcontract[14] by (1) settling Chasney's delay-damage claim and releasing the Government from any further liability, ostensibly without Chasney's consent; and (2) receiving compensation for Chasney's claim from the Government but failing to remit that compensation to Chasney.  (ECF No. 37–1 at 9.)

The problem with Chasney's tardy breach-of-contract claim is that it arises from essentially the same set of facts as the Miller Act claim, facts that would have been well within Chasney's knowledge long before this litigation commenced.  Chasney, a sophisticated party, knew (or can certainly be charged with having known) the terms of its Subcontract, including Articles 11 and 17.  Chasney likewise understood, *as per its original Complaint*, that JWA

---

[13] While courts have recognized that a motion to amend may prejudice the nonmovant where the motion would shift the theory of the case, thereby rendering the nonmovant's prior discovery a "misdirected use of resources," *Sharkey IRO/IRA v. Franklin Res.*, 263 F.R.D. 298, 301 (D. Md. 2009), the Fourth Circuit has cautioned that the prejudice associated with a new legal theory is most problematic where the amendment is offered shortly before or during trial, *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986).

[14] Article 11 of the Subcontract contains the no-damages-for-delay clause as well as a clause providing that Chasney "shall have the right, at its expense, to exercise against the [Government] all provisions of the Prime Contract to recover [delay] damages."  (ECF No. 1–2 at 3.)  Article 17 adds that "Disputes arising out of [Government] acts, omissions or responsibilities shall be resolved in accordance with the dispute procedures in the Prime Contract" and that Chasney "shall have the right to exercise [JWA's] rights at [Chasney's] sole cost and shall be bound thereby."  (*Id.* at 5.)

"sought and obtained compensation from the [USACE] for delays to the Project, including the delays suffered by [Chasney] on the Project," but that Chasney had received no portion of that settlement.   (ECF No. 1 ¶¶ 14-15.)   While Chasney avers in proposed Count II that JWA "breached the [Subcontract] by settling Chasney's Delay Claim . . . without consulting with or obtaining Chasney's consent to the settlement" (ECF No. 37–1 at 8), Peter Chasney, the firm's president, previously attested that "Chasney's delay claim was prepared at [JWA's] request, with [JWA's] direct participation and direction . . . specifically so that [JWA] could include Chasney's delay claim in its own certified delay claim that it submitted to the Government" (ECF No. 28–4 at 3).   In light of that attestation, the Court struggles to understand why Chasney waited over fifteen months after filing its initial Complaint—and nearly two months after the deadline for amendments—to introduce its breach-of-contract claim.

In fact, in its Motion to Amend, Chasney *admits* that it had "reason to believe that [JWA] prejudiced Chasney's rights against the Government by virtue of the settlement of its claims," but it insists that its belief was only "confirmed" once it received certain documents produced by JWA.   (ECF No. 37 at 5.)[15]   Yet a party need not wait on evidentiary "confirmation" before pleading a claim for which it has a reasonable, good-faith basis.   *See Ridenour v. Multi-Color Corp.*, No. 2:15cv41, 2015 WL 7769469, at *2 (E.D. Va. Nov. 30, 2015) ("A plaintiff is generally permitted to plead facts based on 'information and belief' if such plaintiff is in a position of uncertainty because the necessary evidence is controlled by the defendant."); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1224 (3d. ed. 2004) ("[P]ermitting allegations on information and belief is a practical necessity. . . . Pleading on information and belief is a desirable and essential expedient when matters that are necessary to

---

[15] JWA evidently produced the subject documents on September 2, 2015.   (ECF No. 37 at 2.)   Thereafter, it took Chasney an additional six weeks to prepare and submit its proposed Amended Complaint.

complete the statement of a claim are not within the knowledge of the plaintiff but he has sufficient data to justify interposing an allegation on the subject."). Moreover, if for whatever reason Chasney felt that it could not supplement its Complaint without first reviewing a particular document, Chasney should have filed a timely motion to extend the deadline for amendment of pleadings. *Cf. Potomac Elec. Power Co.*, 190 F.R.D. at 375 ("'Properly construed, "good cause" means that scheduling deadlines cannot be met despite a party's diligent efforts.' Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." (quoting *Dilmar Oil Co. v. Federated Mut. Ins. Co.*, 986 F. Supp. 959, 980 (D.S.C. 1997), *aff'd*, 129 F.3d 116 (4th Cir. 1997) (unpublished table decision))).

Because Chasney could have included its breach-of-contract claim in its original Complaint; because a lack of evidentiary "confirmation" is no bar to pleading under the Federal Rules or established practice; and because Chasney has proffered no other explanation for its tardy Motion to Amend, Chasney has not satisfied the good-cause standard of Rule 16(b)(4). Consequently, the Court will DENY Chasney's Motion to Amend on that basis without undertaking a separate analysis under Rule 15(a)(2), *see Nourison Rug Corp.*, 535 F.3d at 299.[16]

## IV. *Miscellaneous Matters*

As noted above, the Court expects that it will rule on Defendants' Motion for Partial Summary Judgment (ECF No. 27) and its Supplemental Motion for Partial Summary Judgment (ECF No. 51) once the Supplemental Motion is fully briefed and ripe for decision. In anticipation of such ruling, however, the Court notes two concerns.

First, it appears that one or more pages may be missing from Exhibit J to Chasney's memorandum opposing summary judgment (ECF No. 28–10), *i.e.*, the Settlement Agreement

---

[16] In spite of the Court's decision here, Chasney may take heart at Defendants' apparent concession that Chasney may have an alternate forum in which to litigate its breach-of-contract claim: state court. (ECF No. 39 at 7-8.)

executed between JWA and the USACE.  Specifically, content appears to be missing between pages two and three as entered on the Court's CM/ECF electronic docketing system.  The Court is not certain whether Chasney intended to omit these pages, but in the event that such omission was an oversight, the Court invites counsel for either party to submit as a supplemental exhibit the full and complete Settlement Agreement.  Such submission should be made on or before Monday, February 15, 2016.  If counsel decline to submit such a supplemental exhibit, the Court will resolve the pending summary judgment motions by reference to Exhibit J as presently filed.

Second, both parties have submitted memoranda and exhibits under seal.  (*See* ECF No. 28 by Chasney; ECF No. 51 by Defendants.)  Yet neither party submitted an accompanying motion to seal, as required by the July 16, 2015, Stipulated Order Regarding Confidentiality (ECF No. 24 at 4) and Local Rules 104.13 and 105.11 (D. Md. 2014).  The Court directs counsel for both parties to comply with all Local Rules governing confidential submissions from this point forward.

## ORDER

For the foregoing reasons, it is ORDERED:

1. Chasney's Motion to Amend (ECF No. 37) is DENIED;

2. Defendants' Motion to Strike Evidence of Settlement Offers (ECF No. 36) is GRANTED;

3. Exhibit D (ECF No. 28–4) to Chasney's memorandum opposing summary judgment is hereby STRICKEN from the Court's docket;

4. On or before Monday, February 15, 2016, Chasney may file a supplemental Exhibit D that redacts or omits any reference to JWA's settlement offer; and

5.  On or before Monday, February 15, 2016, counsel for either party may file as a supplemental exhibit the full and complete Settlement Agreement executed between JWA and the USACE.

DATED this 1st day of February, 2016.

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge